IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERYL ALLISON | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INDEMNITY COMPANY | : | NO. 07-CV-4618 |
|     Defendant. | : | |

MEMORANDUM OPINION

**TIMOTHY R. RICE**
**U.S. MAGISTRATE JUDGE**                                                                           June 27, 2008

      This insurance breach of contract and bad faith case requires determining whether sufficient evidence exists to support summary judgment under Federal Rule of Civil Procedure 56(c).  Presently before me are defendant Allstate Indemnity Company's ("Allstate") Motion for Summary Judgement on Counts I and II of plaintiff Cheryl Allison's ("Allison") complaint (Document No. 26), Allison's response thereto and Counter-motion for Summary Judgment (Document No. 29), and Allstate's Motion to Strike Allison's Counter-motion for Summary Judgment (Document No. 33).

      For the following reasons, Allstate's Motion for Summary Judgment for Count I of Allison's complaint is DENIED, Allstate's Motion for Summary Judgment for Count II of Allison's complaint is GRANTED, Allison's Counter-motion for Summary Judgment is DENIED, and Allstate's Motion to Strike is DENIED as moot.

I.     **Background**

      Allstate issued Allison a Standard Homeowners Policy form AP958, Amendment of Policy Provisions form AP1200, Standard Homeowners Policy Amendatory Endorsement form

AP1298-1, and Limited Water Damage Endorsement form AP1147 for coverage of her property at 912 Whitby Avenue, Yeadon, PA 19050.

Allison reported an insurance claim to Allstate on August 28, 2006 for water damage to this property.  The parties dispute the cause of the water damage.  Allstate's claim log on August 28, 2006 documented Allison stated "her down spout and her neighbors down spouts were clogged and during the very heavy rainstorm water backed up onto the roofs and caused the water to leak into all three levels of her home . . . ."  Allstate denied the claim.

On August 30, 2006, Allison contacted Allstate again, and the claim log documented she stated "her damages were caused by wind . . . wind damaged the neighbor's roof causing the water to come into her property causing the damages . . . it is possible that there is wind damage to her property."

On September 25, 2006, Allstate's claim log documented a call from Hillis Adjustment Agency on Allison's behalf requesting an inspection of the property.  Allstate adjuster Thomas Schellenger inspected the interior of the property on October 3, 2006 and prepared an estimate for the interior damages.  Public adjuster William Babst of Hillis Adjustment Agency informed Schellenger at the inspection that the winds blew a large tree limb on to the roof, which created an opening in the roof.

On November 9, 2006, roofer Joseph Tomes of Joseph Tomes & Sons inspected the property and prepared a report for Allstate stating "No Damages from Winds or Tree Branches." Allstate denied Allison's claim.  At the request of public adjuster William Babst of Hillis Adjustment Agency, Allstate adjuster Thomas Schellenger and roofer Joseph Tomes reinspected

the property on December 11, 2006.  Based on the reinspection, Allstate reiterated its denial of the claim.

II.     **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing the record reveals no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings to set forth specific facts showing there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts;" it must produce competent evidence supporting opposition. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  I must resolve all justifiable inferences in the non-moving party's favor. Sommer v. Vanguard Group, 461 F.3d 397, 403 (3d Cir. 2006).  I may not weigh the evidence or make credibility determinations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Therefore, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

To defeat a motion for summary judgment, factual disputes must be both material and genuine. Anderson, 477 U.S. at 248.  An issue is "material" if it is predicated upon facts that are relevant and necessary and that may affect the outcome of the matter pursuant to the underlying

law.  Id.  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 248-49.  Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, because such a failure as to an essential element necessarily renders all other facts immaterial.  Celotex Corp., 477 U.S. at 322-23.  Thus, if there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party.  Anderson, 477 U.S. at 250.

III.     **Discussion**

A.     Breach of Contract Claim - Count I

To maintain a breach of contract action a plaintiff must demonstrate: (1) the existence of a contract, (2) a breach of a duty imposed by the contract and (3) resultant damages.  Miller v. First Liberty Ins. Corp., 2008 WL 2468605, at *3 (E.D. Pa. June 17, 2008) (O'Neill, J.) (citing Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)).  An insurance contract's interpretation is a question of law I must decide.  Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997); Hanna v. State Farm Fire & Cas. Co., 2007 WL 2343778, at *3 (E.D. Pa. Aug. 13, 2007) (Baylson, J.).  "When the language of an insurance contract is clear and unambiguous, [I am] required to enforce that language."  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999); Hanna, 2007 WL 2343778, at *3.  "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."  Miller, 2008 WL 2468605, at *3 (citing 401 Fourth Street, Inc. v. Investors Ins. Group, 879 A.2d 166, 171 (Pa. 2005)).  If a provision is ambiguous I should construe it in favor of the insured and against the insurer.  Reliance Ins. Co., 121 F.3d at 900.

The relevant terms of the homeowner's policy are unambiguous. The policy states:

> Losses We Cover Under Coverages A, B and C: We will cover sudden and accidental physical loss to the property described in Coverage A – Dwelling Protection, Coverage B – Other Structures Protection and Coverage C – Personal Property Protection except as limited or excluded in this policy, caused by . . . [w]indstorm or [h]ail. We do not cover: a) loss to the interior of a building structure, or covered property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall . . . .

See Defendant Allstate Indemnity Company's Motion for Summary Judgment at Exhibit C at 8, Allison v. Allstate Indem. Co., No. 07-4618 (E.D. Pa. filed June 2, 2008) [hereinafter Defendant's Motion]. Under "Losses We Do Not Cover Under Coverages A, B and C" the policy provides "we do not cover loss to the property . . . caused by or consisting of . . . water or any other substance that backs up through sewers or drains." Id. at Exhibit C at 9. Allison added a Limited Water Damage Endorsement to the policy, which provides coverage for "water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow." Id. at Exhibit C Policy Endorsement. This addition, however, also precludes recovery from a "loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure." Id.

Allstate alleges no genuine issue of material fact exists that Allison's loss was not covered by the policy. See Defendant's Motion at ¶ 62. Allison claims the damage to her home

5

was caused by wind, which is covered under the policy. See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of her Counter-motion for Summary Judgment at 3, Allison v. Allstate Indem. Co., No. 07-4618 (E.D. Pa. filed June 13, 2008). Additionally, Allison claims even if the damage was caused by the gutters and down spouts, as Allstate alleges, it is still covered under the Limited Water Damage Endorsement. Id. at 3-4.

Allison's claim that if the down spouts or gutters caused the damage it is covered under this policy is meritless. Allison alleges the loss is covered under the Limited Water Damage Endorsement because the gutters and down spouts are part of the plumbing system. Although the endorsement provides coverage for the plumbing system, it specifically precludes coverage for loss from water which backs up through sewers or drains and loss caused by rain without related wind damage. See Defendant's Motion at Exhibit C. The policy does not define plumbing system, gutter or down spout. When a term is undefined, I must construe it in accordance with its natural, plain, and ordinary meaning, which may be informed by the term's dictionary definition. Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 108 (Pa. 1999). Merriam-Webster's Online Dictionary defines pluming as "the apparatus (as pipes and fixtures) concerned in the distribution and use of water in a building." See Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary. A gutter is defined as a "trough along the eaves to catch and carry off rainwater." Id. A down spout is defined as "a vertical pipe used to drain rainwater from a roof." Id. By definition and the terms' plain, natural and ordinary meanings, gutters and down spouts are not involved in the "distribution and use of water in a building," and instead involve rainwater outside the home. They do not fall within the plumbing

system endorsement.[1]  Thus, no genuine issue of material fact exists regarding whether damage caused by the down spouts or gutters is covered under the policy.  Allison is precluded from seeking recovery on Count I under this theory of coverage.

However, a factual dispute exists whether wind caused the loss, which Allstate concedes would be covered by the policy.  See Defendant's Motion at ¶ 46.   A factual dispute regarding the cause of the loss is a quintessential jury question.  See Cooper Indus. Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 445 (2001) (decision of disputed question of fact is assigned to the jury).  Allstate claims Allison failed to offer any evidence to support wind caused the loss or to contradict its expert's opinion the clogged down spouts and cracks in the roof from wear and tear caused the loss.  See Defendant's Motion at ¶ 57-59.  Allstate, however, fails to address Allison's evidence of wind damage from Hillis Adjustment Agency or the invoice from Inner-City Craftsmen noting the wind's damage.  See Plaintiff's Complaint at Exhibit B and C, Allison v. Allstate Indem. Co., No. 001247 (Ct. Com. Pleas Phila. filed Aug. 14, 2007).  Additionally, Allison states William Babst will testify regarding his roof inspection, including his opinion the damage was caused by wind.  See Plaintiff's Response to Defendant's Motion for Summary Judgment and Counter-Motion for Summary Judgment at Exhibit C, Allison v. Allstate Indem. Co., No. 07-4618 (E.D. Pa. filed June 13, 2008).  Allstate failed to challenge Babst's ability to testify to such information.  Although Allstate's records suggest Allison's theory of loss has been somewhat of a moving target, I may not weigh the evidence or make credibility determinations.

---

[1] Allison's reliance on Stone v. Royal Insurance Company, 511 A.2d 717 (N.J. 1986) fails because the case involved a sump pump in the basement of the home, which the court found constituted an appliance under the policy.  511 A.2d at 718.  Moreover, Allison's policy specifically excludes coverage of loss caused by "water or any other substance that overflows from a sump pump . . . ."  See Defendant's Motion at Exhibit C at 9.

Anderson, 477 U.S. at 255. Viewing the record in the light most favorable to Allison, a reasonable jury could return a verdict for her. See id. at 248; Sommer, 461 F.3d at 403. Therefore, a genuine issue of material fact exists regarding how the loss occurred, and Allstate's motion for summary judgment on Count I is denied.

B.     <u>Bad Faith Claim - Count II</u>

Allison's bad faith claim, however, involves no material factual dispute. An insured has a cause of action against an insurer who acts in bad faith. 42 Pa. Cons. Stat. § 8371 (1998).[2] Bad faith is "any frivolous or unfounded refusal to pay proceeds of a policy." Miller, 2008 WL 2468605, at *4 (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Bad faith "imports a dishonest purpose and means a breach of a known duty," i.e., good faith and fair dealing, "through some motive of self-interest or ill will." Id. "Although the insurer's conduct need not be fraudulent, mere negligence or bad judgment is not bad faith." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (internal quotation omitted); Hanna, 2007 WL 2343778, at *4.

---

[2] Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371, provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> > (2) Award punitive damages against the insurer.
> > (3) Assess court costs and attorney fees against the insurer.

To establish bad faith, plaintiff must prove by clear and convincing evidence: (1) the insurer did not have a reasonable basis for denying benefits under the policy; and (2) the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. Babayan, 430 F.3d at 137; Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 528 (3d Cir. 1997); Hanna, 2007 WL 2343778, at *4 (citing Polselli, 126 F.3d at 528; Terletsky, 649 A.2d at 688). The clear and convincing standard requires plaintiff to show evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether [] defendant[] acted in bad faith." Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) (Reed, J.).

Allison claims Allstate acted in bad faith when she first called to report her claim and stated her down spouts clogged and caused her roof to leak. As discussed above, Allison's policy does not cover such a loss, and therefore, Allstate had a reasonable basis for denying benefits under the policy. See Bell v. Allstate Ins. Co., 2005 WL 1353527, at *4 (E.D. Pa. May 31, 2005) (Surrick, J.) (because no coverage existed under the terms of the Policy, it was reasonable to deny benefits).

Additionally, when Allison called Allstate a second time to report the loss was caused by wind, Allstate investigated the claim, and then reinvestigated it at Allison's request. Allstate relied on an expert who found the wind did not cause the loss, finding instead the clogged down spouts and cracks in the roof from wear and tear caused the damage, which are not covered under the policy. Although Allison may contest the expert's opinion on causation, no reasonable jury could find sufficient evidence that Allstate's reliance on the expert opinion resulted in a frivolous or unfounded refusal to pay under the policy. See Miller, 2008 WL 2468605, at *4. Allison fails

9

to present clear and convincing evidence so clear, direct, weighty and convincing to show Allstate did not have a reasonable basis for denying benefits under the policy, and knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. See Polselli, 126 F.3d at 528; Babayan, 430 F.3d at 137; Hanna, 2007 WL 2343778, at *4; Bostick, 56 F. Supp. 2d at 587. Allstate's substantial, thorough investigation, which included two investigations with pictures taken of the property and on-site inspections, establishes a reasonable basis to defeat a bad faith claim. Smith v. Westfield Ins. Co., 2007 WL 1740816, at *4 (E.D. Pa. June 15, 2007) (Robreno, J.) (no bad faith because defendant did thorough investigation). The fact that Allstate's conclusion might prove incorrect fails to establish Allstate had a dishonest purpose, ill will, or disregard for the truth. Id.; Bostick, 56 F. Supp. 2d at 587 (no bad faith when insurer relies on reasonable but incorrect expert opinion); Totty v. Chubb Corp., et al., 455 F. Supp.2d 376, 390 (W.D. Pa. 2006) ("even if the expert incorrectly assessed the cause of damage, this is not evidence that his conclusions were unreasonable or that Defendant acted unreasonably in relying upon them"). No evidence supports Allison's conclusory assertions of bad faith based on the alleged incompetency of Allstate's expert. Moreover, such allegations would reflect mere negligence or bad judgment, not ill will. See Babayan, 430 F.3d at 137; Miller, 2008 WL 2468605, at *4. Allison does not establish a genuine issue of material fact exists regarding whether Allstate had a reasonable basis for denying the benefits under the policy or recklessly disregarded its lack of a reasonable basis. Thus, Allstate's motion for summary judgment on Count II is granted.

      An appropriate order follows.